IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| TERESA WARD COOPER | § | |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | NO. 3-04-CV-2407-N |
| VS. | § | |
| | § | (Consolidated With: |
| CITY OF DALLAS, TEXAS, | § | No. 3-06-CV-1794-N) |
| ET AL. | § | |
| | § | |
| Defendants. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Defendants the City of Dallas, Texas ("the City"), and its police chief, David Kunkle, have filed a motion for summary judgment in this discrimination, retaliation, and civil rights action brought under federal and Texas law. For the reasons stated herein, the motion should be granted on the affirmative defense of res judicata.

I.

Plaintiff Teresa Ward Cooper, a white female who professes Christian and Wiccan beliefs, was employed as a Dallas police officer from April 1988 to August 30, 2005. (Def. MSJ App. at 44, 454; *see also* Plf. MSJ Resp. App. at 180-81). In May 2000, plaintiff was promoted to the rank of sergeant and assigned to the Southeast Patrol Division. (Def. MSJ App. at 192, 196). Within a few months of her promotion, plaintiff alleges that her male supervisors and co-workers subjected her to sexual harassment and gender discrimination, which included making lewd and derogatory comments and giving her negative performance evaluations. (*See* Def. MSJ App. at 278-80; Plf. Sec. Am. Compl. at 4, ¶¶ 10-11). Plaintiff reported these acts to then-police chief Terrell Bolton in March 2001. (*See* Def. MSJ App. at 196-203). That same month, plaintiff was transferred to the

North Central Patrol Division, where she alleges that this pattern of harassment and discrimination continued. (*Id.* at 216, 280-92). In addition, plaintiff contends that she was subjected to discrimination on the basis of her religious beliefs and retaliated against for filing internal grievances. (*Id.* at 225; *see also* Plf. Sec. Am. Compl. at 4-5, ¶¶ 12-14). During her 11-month stint at the North Central Patrol Division, plaintiff filed more than 20 grievances complaining of discrimination and retaliation. (Def. MSJ App. at 217).

In January 2002, plaintiff sought promotion to the rank of lieutenant. Upon learning that she was passed-over for promotion, plaintiff complained that the selection process discriminated against white female candidates, that the written assessment was flawed, and that no allowance was made for "the extreme stress she was under due to the investigations and pact against her at the time of the examination[.]" (*Id.* at 290). In April 2002, plaintiff was transferred to the Central Patrol Division, where she worked as a station sergeant and a field sergeant. (*Id.* at 272). Six months later, in October 2002, plaintiff was diagnosed with a generalized anxiety disorder and placed on approved leave without pay until April 6, 2003. (*Id.* at 150, 205, 241). Plaintiff never returned to work.

On May 16, 2003, plaintiff was terminated by the City. In a letter to plaintiff, the police chief explained:

> Your last full day at work was October 6, 2002. On April 7, 2003, you faxed a letter stating your physician had not yet released you to return to work. The letter stated the decision was reached when you last saw your physician on April 2, 2003, and you were next scheduled to see your physician on April 9, 2003. The letter was sent without any corroborating medical documentation. The "physician" to whom you refer is actually not a medical doctor, but your psychologist, Dr. Al Somodevilla.
>
> According to prior documentation from your psychologist, you were to return to work on April 2, 2003. On April 10, 2003, you faxed a statement from your psychologist with a new return date of "at least 30 days." On May 11, 2003, you did not report for duty, and you did

> not call in regarding your continued absence. When officers were sent to your home to check on your status, you refused to answer the door or speak with them when they attempted to contact you by telephone.
>
> Family Medical Leave for 2003 has been exhausted and Short Term Disability Expired on April 6, 2003.

(*Id.* at 213). Plaintiff appealed her termination to the Civil Service Commission. Following a two-day hearing in February 2004, an administrative law judge found that plaintiff's termination was procedurally defective under police department regulations and ordered her reinstated, but without back pay or benefits. (*Id.* at 130).

Plaintiff remained absent from work under the care of her psychologist, Dr. Somodevilla, for another seven months. On October 5, 2004, Dr. Somodevilla reported that plaintiff had reached maximum improvement and released her to return to duty "contingent upon the results of a Fitness-for-Duty evaluation." (*Id.* at 373). Although the police department scheduled five evaluations with three different doctors between October 2004 and February 2005, plaintiff either failed to appear for her appointments or refused to cooperate with the examiners. (*See id.* at 330-31, 374-75, 428). As a result, plaintiff was charged with insubordination and placed on unapproved leave without pay pending further investigation. (*Id.* at 428). On August 30, 2005, plaintiff was terminated by the City for insubordination related to her failure to participate in a fitness-for-duty evaluation. (*Id.* at 442-43).

In November 2004, plaintiff filed the first of three lawsuits related to her employment with the Dallas police department.[1] The first case, which was filed in federal district court, involves allegations of race, gender, and religious discrimination, hostile work environment, and retaliation.

---

[1] Plaintiff also filed a declaratory judgment action in state district court seeking to enforce subpoenas issued in connection with her administrative hearing before the Civil Service Commission. The resolution of that case has no bearing on the disposition of the pending summary judgment motion.

*See Cooper v. City of Dallas*, No. 3-04-CV-2407-N (N.D. Tex.) (*"Cooper I"*). Among the adverse employment actions alleged by plaintiff in *Cooper I* are the failure to promote her to the rank of lieutenant in January 2002 and her termination in May 2003. Three months later, in February 2005, plaintiff sued the City in state district court seeking a review of the administrative decision reinstating her without back pay and benefits. *Cooper v. City of Dallas, Texas*, No. 05-01690-I (162nd Dist. Ct., Dallas Co., Tex.) (*"Cooper II"*). Plaintiff later amended her pleadings in *Cooper II* to allege that she was denied a fitness-for-duty evaluation by a physician of her own choice. (*See* Def. MSJ App. at 173). Following a bench trial, the state court upheld the administrative decision on a substantial evidence review, and denied all other relief requested by plaintiff. (*Id.* at 174). That decision was affirmed on direct appeal. *Cooper v. City of Dallas, Texas*, 229 S.W.3d 860 (Tex. App.--Dallas 2007, pet. denied). While the state appeal was pending, plaintiff filed another federal lawsuit challenging her termination on August 30, 2005. *Cooper v. City of Dallas*, No. 3-06-CV-1794-N (N.D. Tex.) (*"Cooper III"*). Plaintiff also appealed her termination to the Dallas City Manager. That administrative appeal has been abated pending the outcome of the federal litigation.

Shortly after plaintiff filed *Cooper III*, the court consolidated the two federal actions and ordered plaintiff to file an amended complaint containing "all claims and causes of action [she] intends to assert against defendants." *See* Order, 12/1/06. In her amended complaint, plaintiff asserts a variety of claims against the City and its police chief, David Kunkle, dating back to October 2000. As best the court can decipher, plaintiff accuses defendants of: (1) race, gender, and religious discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*; (2) disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*; (3) terminating her employment in violation of the Family Medical Leave Act of 1993 ("FMLA"),

29 U.S.C. § 2615, and the anti-retaliation provisions of the Texas Worker's Compensation Act, Tex. Lab. Code Ann. § 451.001, *et seq.*; and (4) violating certain rights guaranteed by the United States Constitution, the Texas Constitution, and the Dallas City Charter. The case is before the court on defendants' motion for summary judgment. One of the grounds urged by defendants is that all claims asserted by plaintiff in the consolidated federal action are barred by res judicata.[2] The issues have been briefed by the parties and the motion is ripe for determination.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Where, as here, a party seeks summary judgment on an affirmative defense, the movant must establish "beyond peradventure *all* of the essential elements of the [ ] defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

---

[2] Defendants also move for summary judgment on the grounds that plaintiff cannot prove any of her federal or state claims. In view of the recommended disposition of this motion, the court need not consider these alternative grounds for summary judgment.

A.

As a preliminary matter, plaintiff moves to strike defendants' motion, brief, and appendix of evidence. According to plaintiff, the appendix is not properly indexed, contains duplicate or unnumbered pages, and otherwise is procedurally defective, (*see* Plf. Mot. to Str. at 1-2, ¶¶ 1-4), while the brief fails to "include citations to each page of the Appendix that support each assertion that the party makes concerning the summary judgment evidence," (*id.* at 3, ¶ 7, *citing* N.D.Tex. LCivR 56.3(a)(3)). Even if the appendix and brief do not strictly comply with the local rules governing summary judgment practice, the court declines to strike the materials on that basis. *See* FED. R. CIV. P. 83(a)(2) ("A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply.").

Plaintiff also objects that the declarations of Chief David Kunkle and Assistant City Manager Charles Daniels are "conclusory and self-serving." (*Id.* at 3, ¶ 6). The court has not considered either declaration in ruling on the motion for summary judgment, except as necessary to provide general background information. Consequently, plaintiff's objections are overruled as moot. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3-04-CV-1866-D, 2006 WL 984690 at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that is not considered by the court in deciding motion for summary judgment).

B.

Defendants contend that the state court judgment in *Cooper II* is res judicata of all claims asserted by plaintiff in the consolidated federal action. The rule of res judicata, or claim preclusion, "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1662 (2006). The policy considerations underlying the doctrine are the "promotion

of judicial economy, prevention of vexatious litigation, prevention of double recovery, and promotion of the stability of decisions." *Hogue v. Royse City*, 939 F.2d 1249, 1254 (5th Cir. 1991), *quoting Gilbert v. Fireside Enterprises, Inc.*, 611 S.W.2d 869, 876-77 (Tex. Civ. App.--Dallas 1980, no writ). When a federal court is asked to give preclusive effect to a state court judgment, the court applies state res judicata principles. *See Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000). Under Texas law, a judgment is entitled to preclusive effect where:

> (1) there is a prior final judgment on the merits by a court of competent jurisdiction;
>
> (2) the parties in the two actions are identical or in privity with each other; and
>
> (3) the second action is based on the same claims that were raised, or could have been raised, in the first action.

*Citizens Ins. Co. of America v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007); *see also Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

Plaintiff tacitly concedes that the parties in *Cooper II* and the consolidated federal action are identical or in privity with one another. In addition, the court has little difficulty concluding that there is a prior final judgment on the merits by a court of competent jurisdiction, regardless of any appeal taken by plaintiff. The state court entered its judgment in *Cooper II* on March 6, 2006. (*See* Def. MSJ App. at 174). Under Texas law, a judgment is final for res judicata purposes despite the taking of an appeal, unless the appeal actually consists of a trial de novo. *See Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986). In any event, the judgment in *Cooper II* now has been affirmed on direct appeal, and the Texas Supreme Court has denied a petition for review. Thus, the only question remaining is whether the consolidated federal action is based on the same claims that were raised, or could have been raised, in *Cooper II*.

C.

Texas has adopted a "transactional test" to determine whether two cases involve the same claims or causes of action. As the Texas Supreme Court explained:

> The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on *causes of action* or defenses which arise out of the same *subject matter* and which might have been litigated in the first suit.
>
> * * * *
>
> A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation. It requires an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action. Any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit.

*Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992) (citing cases) (emphasis in original); *See also* Restatement (Second) of Judgments § 24(1) (a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose). Under this approach, "res judicata precludes relitigation of claims that have been finally adjudicated or that arise out of the same subject matter and that *could have been litigated* in the prior action between the parties." *Heard v. Moore*, 101 S.W.3d 726, 728 (Tex. App.--Texarkana 2003, pet. denied) (emphasis in original).

In the consolidated federal action, plaintiff presents a litany of complaints dating back to October 2000 related to her employment with the Dallas police department. Plaintiff generally alleges that she was disparately disciplined, denied a promotion, denied back pay and benefits, and ultimately terminated on the basis of her race, gender, disability, and religious beliefs and in retaliation for engaging in protected activity. (*See* Plf. Sec. Am. Compl. at 4-5, ¶¶ 10-16 & 11-14,

¶¶ 38-55). More particularly, plaintiff challenges: (1) the City's failure to promote her to the rank of lieutenant in January 2002; (2) her placement on leave without pay on October 7, 2002; (3) her initial discharge on May 16, 2003; (4) the City's refusal to allow a fitness-for-duty evaluation by a physician of her choice; (5) her ultimate termination on August 30, 2005; and (5) the decision to abate her administrative appeal pending the outcome of this litigation. (*See id.* at 6, ¶ 8; 11-13, ¶¶ 39-44; 15, ¶ 62; 16, ¶ 64; 17, ¶ 68; 18, ¶ 76 & 20, ¶ 88). The claims raised by plaintiff in the state litigation were considerably narrower. In *Cooper II*, plaintiff challenged only the administrative decision denying her back pay and benefits following her reinstatement in February 2004, and the City's refusal to allow a fitness-for-duty evaluation by her own physician. (*See* Def. MSJ App. at 166-67).

At least one of plaintiff's claims in the consolidated federal action--that she was denied a fitness-for-duty evaluation by a physician of her choice--was actually litigated in *Cooper II*. Although plaintiff *chose* not to raise any of her other federal claims in the state litigation, that is not the test for res judicata purposes. Rather, the relevant inquiry is whether the claims asserted by plaintiff in the state and federal actions arise out of the same subject matter and *could have been litigated* in the state lawsuit. *See Heard*, 101 S.W.3d at 728. Certainly, the facts made the basis of plaintiff's claims in both cases arise out of the same subject matter--the terms and conditions of her employment with the City and ultimate separation therefrom. *See Moreno v. Irons*, No. 05-99-01296-CV, 2000 WL 463728 at *3 (Tex. App.--Dallas Apr. 25, 2000, no pet.) ("The two lawsuits at issue involve the same causes of action because they both arise out of the termination of appellants' employment [ ] and the reasons behind their termination--the same nucleus of operative facts."). With due diligence, all of the claims asserted by plaintiff in the consolidated federal action, including those claims involving violations of federal statutes, could have been litigated in *Cooper*

*II. See, e.g. Turner v. City of Carrollton Civil Service Comm'n*, 884 S.W.2d 889, 894 (Tex. App.--Amarillo 1994, no pet.) (former police officer could have brought wrongful discharge and civil rights claims as part of action seeking to set aside decision of Civil Service Commission); *Paz v. City of Houston*, 748 F.Supp. 480, 486 (S.D. Tex. 1990) (state court judgment affirming decision of Civil Service Commission was res judicata of constitutional claims raised by police officer in subsequent federal litigation).[3]

Nor is res judicata defeated because the federal lawsuit was filed before the state action. Although *Cooper II* was the second-filed case, it proceeded to judgment first. Plaintiff gambled by splitting her claims and filing separate lawsuits in different forums. The pleading deadline in the state action did not expire until January 27, 2006--more than five months after plaintiff's final termination and three months after her administrative appeal was abated. (*See* Def. MSJ App. at 485). Thus, plaintiff could have timely amended her state court pleadings to include all of the claims raised in the federal litigation. Under these circumstances, the third element of res judicata is satisfied. *Hogue*, 939 F.2d at 1255-56 (citing Texas cases) (under Texas law, when two suits proceed simultaneously, res judicata effect is given to first judgment rendered); *see also In re Hansler*, 988 F.2d 35, 38 (5th Cir. 1993) (first judgment rendered is given preclusive effect regardless of when suits were filed).[4]

---

[3] While plaintiff may have had a plausible argument that *Cooper II* was limited to the appeal of an administrative decision under a substantial evidence standard of review, the fact that she subsequently amended her pleadings in that case to challenge the City's refusal to allow a fitness-for-duty evaluation by her own physician, which ultimately led to her termination, shows that all claims arising out of plaintiff's employment with the City could have been litigated in the state action.

[4] Plaintiff also argues, without explanation or authority, that "[d]efendants *only* waived their governmental immunity in the State District Court, so that matter could *not* be joined in this case." (Plf. Resp. Br. at 22) (emphasis in original). Even if this statement is true, the court notes that plaintiff's federal claims are barred because she failed to raise them in her state lawsuit, not the other way around.

# RECOMMENDATION

Defendants' motion for summary judgment [Doc. #142] should be granted on the affirmative defense of res judicata. This case should be dismissed with prejudice.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 20, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE